<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| THANG DUONG, *on behalf of himself and all others similarly situated,* <br><br> Plaintiff, <br><br> v. <br><br> PRESSLER FELT & WARSHAW, LLP, <br><br> Defendant. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 22-5630 (KMW-AMD) <br><br><br> **OPINION** |

APPEARANCES:

Lawrence C. Hersh, Esquire
17 Sylvan Street, Suite 102B
Rutherford, NJ 07070

    *Counsel for Plaintiff*


Mitchell L. Williamson, Esquire
**BARRON & NEWBURGER, P.C.**
458 Elizabeth Ave, Suite 5371
Somerset, NJ 08873

Michael J. Peters, Esquire
**PRESSLER, FELT & WARSHAW, LLP**
7 Entin Road
Parsippany, NJ 07054

    *Counsel for Defendant*

**WILLIAMS, District Judge:**

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff Thang Duong's ("Plaintiff") Motion for Summary Judgment (ECF No. 48, "MSJ Br.") pursuant to Fed. R. Civ. P. 56. The Motion is opposed by Defendant Pressler Felt & Warshaw, LLP ("Defendant") (ECF No. 54, "Opp."). For the reasons set forth below, Plaintiff's Motion is **DENIED**.[1]

## II.   FACTUAL BACKGROUND

This action stems from Defendant's efforts to collect a consumer debt from Plaintiff in the amount of $1,491.23 (the "Debt"). (Statement of Material Facts ("SUMF") ¶ 4.) Plaintiff held a consumer credit card account with Citibank, N.A. ("Citibank"), which went into default due to Plaintiff's inability to make payments. (*Id.* ¶¶ 1-2.) Citibank sold the defaulted account to Midland Credit Management, Inc. ("MCM"), a purchaser of consumer debt. (*Id.* ¶ 3.)

### a.   The Cardholder Agreement

The operative cardholder agreement ("Cardholder Agreement") for the subject Citibank credit card contains an arbitration provision. The opening paragraph thereof states, in pertinent part, that "[t]his arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow." (Duong Decl., Ex. A at 10, ECF No. 48-2.) The arbitration provision further provides, in pertinent part:

> If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim. . . . . Arbitration may be requested at any time, even where there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion or discovery in a court lawsuit. To choose arbitration, a party may file a motion to compel arbitration in a pending matter and/or commence

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

2

arbitration by submitting the required AAA forms and requisite filing fees to the AAA.

(*Id.*)

### b. The State Court Action

Defendant, as MCM's counsel, filed a collection action on behalf of MCM in the Superior Court of New Jersey, Burlington County, Special Civil Part, captioned *Midland Credit Management, Inc. v. Duong*, bearing Docket No. BUR-DC-004060-21 ("State Court Action" or "SCA") on June 9, 2021, which sought to collect the Debt from Plaintiff. (SUMF ¶ 4.) Plaintiff, acting *pro se*, filed an Answer to the SCA on July 5, 2021. (*Id.*) Plaintiff's Answer did not raise as an affirmative defense that the matter was subject to arbitration. (*See* Hersch Decl., Ex. 4, ECF No. 48-1.) Plaintiff was provided notice of the September 22, 2021 trial date immediately after filing his answer in the SCA that stated:

> A NON-JURY TRIAL HAS BEEN SCHEDULED FOR THIS CASE ON 9-22-2021 AT 09:00AM[.] ANY REQUEST TO ADJOURN MUST BE IN WRITING W/COPY TO OPPONENT[.] PLEASE REPORT TO: JUDGE HARRINGTON COURT ROOM REMOT[E.] YOU MUST ATTEND REMOTELY. CONTACT THE COURT FOR DETAILS.

(Warshaw Decl., Ex. B, ECF No. 54-1.) The state court's notice provided the method for Plaintiff to request an adjournment and instructions to contact the court for details. On August 19, 2021, Defendant filed a motion for summary judgment in the SCA. (*Id.* ¶ 5.) On August 24, 2021, the state court issued a second trial notice that stated:

> IMPORTANT NOTICE You are receiving this notice because you have a pending Special Civil or Small Claims case in Burlington County. In light of the current public health emergency, the court is scheduling VIRTUAL MANDATORY TRIALS in these matters. The above case is scheduled for a TRIAL before the Honorable John E. Harrington on September 22, 2021 at 9:00 a.m. Your appearance is required. The Trial will take place virtually via ZOOM. You will participate in the trial either on your computer, tablet or smart phone.

3

> (If you do not have access to any of these devices or WIFI, you must immediately contact the court at: 609-288- 9500, extension 38092). Do Not report to the Courthouse for trial. Please join your trial on the specified date and time…. Documentation for the trial or Questions about this proceeding may be directed to BURCivil.mbx@njcourts.gov

(*Id.*, Ex. C.) On August 26, 2021, Plaintiff filed a motion to compel AAA arbitration of the claims Defendant asserted in the SCA. (SUMF ¶ 7.) The next day, the Court scheduled oral argument for September 27, 2021, on Defendant's motion for summary judgment and Plaintiff's motion to compel arbitration. (*Id.* ¶ 8.)

At the trial date scheduled for September 22, 2021, Plaintiff failed to appear, and the state court entered default against him. (*Id.* ¶ 9.) On September 27, 2021, Plaintiff appeared for oral argument on the motion to compel and motion for summary judgment. (*Id.* ¶ 10.) The state court vacated the September 22, 2021 entry of default, granted Plaintiff's motion to compel AAA arbitration, and denied Defendant's motion for summary judgment. (*Id.*)

Plaintiff filed a demand for arbitration with the AAA and paid the $200 filing fee pursuant to the AAA Consumer Arbitration Rules, which provide that the consumer is obligated to pay the initial filing fee of $200, and generally the business shall pay all other fees associated with the arbitration unless the consumer agrees to pay for a greater portion. (*Id.* ¶ 12; *see* Response to SUMF ("RUMF") ¶ 12.) Plaintiff asserts that Defendant was obligated to subsequently pay a $2,900 case management fee and arbitrator compensation deposit, though Defendants argue that it was the responsibility of their client—the business and party to the arbitration—that was required to do so. (*Id.* ¶ 15; *see* RUMF ¶ 15.) At any rate, the $2,900 fee was not paid. (SUMF ¶ 15.)

Defendant wrote a letter to AAA requesting that pursuant to R-9 of the AAA Consumer Rules, the arbitration be dismissed and that MCM be allowed to pursue the matter in small claims court. (*Id.*) AAA responded that this raised an issue of arbitrability that the arbitrator needed to

4

decide. (*Id.* ¶ 16.) That issue was not decided by the AAA because the prerequisite case management fee was never paid, resulting in the administrative termination of the arbitration. (*Id.* ¶ 17.) Defendant then filed a motion in the SCA to have the case reinstated and transferred to the small claims division of the Special Civil Part. (*Id.* ¶ 18.) Plaintiff retained counsel and opposed the motion, arguing the Superior Court had previously ordered the case to arbitration and Defendant was attempting to circumvent the court's order compelling arbitration. (*Id.* ¶ 19.)

In response, Defendant withdrew its motion to reinstate and tried to pay the outstanding arbitration fees to reopen the arbitration. (*Id.* ¶¶ 20-21.) Plaintiff now opposed the effort to arbitrate the dispute, and because Plaintiff did not consent, the arbitration remained closed. (*Id.* ¶ 22.)

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Quincy Mut. Fire Ins. Co. v. Scripto USA*, 573 F. Supp. 2d 875, 878 (D.N.J. 2008) (quoting *Liberty Lobby*, 477 U.S. at 250).

## IV. DISCUSSION

### a. Defendant Was Not Obligated to Request a Stay of the State Court Action.

Plaintiff argues that Defendant violated the FDCPA because it failed to dismiss or request a stay of the state court action ("SCA") after Plaintiff demanded arbitration pursuant to the terms of the cardholder agreement's arbitration provision. (MSJ Br. 9-12, ECF No. 48-4.) Specifically, Plaintiff argues that Defendant's failure to do so violated sections 1692e(5), e(10), and 1692f of the FDCPA. (*Id.* at 10.) 15 U.S.C. § 1692e provides in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> . . . .

6

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(5) and (10). Separately, section 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. As previously noted, the Cardholder Agreement states that its arbitration provision is governed by the FAA and "shall be interpreted in the broadest way the [FAA] will allow." (Duong Decl., Ex. A at 10.) The FAA, in turn, states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, *the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement,* shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The FAA further provides that "[a]ny application to the court [pursuant to the FAA] shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6.

Here, it is undisputed that Plaintiff filed a motion to compel arbitration in the SCA which was granted, thereby referring the case and issue to arbitration on September 27, 2021. (SUMF ¶ 10.) It is also undisputed that when Plaintiff contacted the AAA, the AAA advised him that a court order was required to refer the pending SCA to arbitration. (*Id.* ¶ 42.) Plaintiff argues that Defendant "was required to proceed to AAA arbitration and stop litigating the case in state court" immediately upon Plaintiff "choosing" arbitration, which Plaintiff purportedly did upon filing a motion to compel. (MSJ Br. at 9, 13-14.)

7

The FAA, which indisputably governed the arbitration provision of the Cardholder Agreement, required the state court to satisfy itself that the issue is referable to arbitration in the manner provided by law for making such applications. *See* 9 U.S.C. §§ 3, 6. Plaintiff cites to no legal authority stating that Plaintiff may unilaterally determine that his request to arbitrate comported with the terms and conditions of the Cardholder Agreement, the FAA, and applicable law, nor that Defendant was required to accept Plaintiff's contention that his contractual right to arbitrate was not waived. Rather, to have the pending SCA referred to arbitration, the impetus was on Plaintiff to file a proper motion pursuant to the Rules of Court seeking to compel arbitration and satisfy the state court that the issue was referrable to arbitration pursuant to 9 U.S.C. § 3.

Thus, there was a fair question of whether Plaintiff's invocation of the arbitration provision properly comported with the terms of the Cardholder Agreement and applicable law governing whether the claim was referable to arbitration for the state court to decide, and Defendant did not act unconscionably in violation of the FDCPA by merely allowing the state court to make the necessary determinations required by the FAA. *See* 9 U.S.C. §§ 3, 6.

In support of his position, Plaintiff cites to an unpublished case from the middle district of Pennsylvania, *Destro v. Tsarouhis Law Grp., LLC*, 2019 U.S. Dist. LEXIS 48894 (M.D. Pa. March 15, 2019) and the Second Circuit case, *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017). While not binding authorities, the Court finds they are not persuasive because they are factually and procedurally distinguishable. First, *Destro* concerned denial of a motion to dismiss, not an adjudication on the merits as the present case. Second, *Destro* involved a debt collector defendant who unduly prolonged litigation by ignoring multiple emails from the plaintiff's counsel regarding his election to arbitrate the dispute, again ignored the plaintiff's efforts to meet and confer after the plaintiff filed both an answer asserting arbitration and petition

to compel arbitration, and finally, failed to attend the order to show cause hearing on the petition to compel arbitration. *See Destro*, 2019 U.S. Dist. LEXIS 48894 at *3. Thus, *Destro* involved *several* instances of misconduct on the part of the debt collector, none of which are present here.

Similarly, the Second Circuit's decision in *Arias* is inapposite. In *Arias*, the judgment-creditor defendant refused to release exempt bank funds in violation of New York law after the plaintiff submitted documentary evidence proving the funds were exempt. *Arias*, 875 F.3d at 138. The district court found that the defendant's actions were frivolous and "intended primarily to harass" the plaintiff. *Id.* The Second Circuit, emphasizing that the defendant acted in bad faith, held the conduct to be unfair and unconscionable pursuant to the FDCPA. *Id.* Conversely, here, the state court did not find that Defendant raised frivolous arguments solely for the purpose of harassment or delay. As previously noted, there existed a fair question of whether Plaintiff properly triggered the arbitration provision and the cardholder agreement, FAA, and applicable Rules of Court required the state to make that determination. *See id.*

Plaintiff also argues that by not voluntarily terminating its collection action upon Plaintiff's filing of the motion to arbitrate, Defendant unfairly and unconscionably "forced" Plaintiff to "expend additional time and effort" to attend the September 27, 2021 hearing. (MSJ Br. at 15.) The Court finds this argument meritless in several respects. The state court's notice, triggered by Plaintiff's own motion to compel, required Plaintiff's appearance at the September 27, 2021 hearing—not Defendant. As previously noted, if Plaintiff wanted to refer the pending SCA to arbitration, he was required to comport with the proper procedure provided by the Cardholder Agreement, FAA, and applicable Rules of Court—including those governing motion practice—to obtain the relief sought. That Plaintiff had to do so was the result of his own desire to seek relief in the arbitral forum.

Accordingly, the Court finds that Plaintiff has not demonstrated that he is entitled to summary judgment as a matter of law on the grounds that Defendant's failure to terminate the pending SCA upon Plaintiff's filing of the motion to compel violated the FDCPA.

### b. Defendant Was Not Obligated to Stop the State Court from Entering Default Against Plaintiff for his Failure to Appear at the Duly Noticed September 22, 2021 Hearing.

Plaintiff argues that Defendant violated the FDCPA when it allowed the state court to enter default against Plaintiff and failed to inform the state court that Plaintiff sought arbitration at the September 22, 2021 trial call hearing. (MSJ Br. at 16-17.) Plaintiff contends that upon his filing the motion to compel arbitration, Defendant "should have informed the Court that the case was not going forward," thereby preventing the entry of default. (*Id.* at 16.)

*Rule* 6:6-2 of the New Jersey Rules of Court states that "[w]hen a party against whom affirmative relief is sought has . . . failed to appear at the time fixed for trial . . . the clerk shall enter the party's default." Plaintiff does not dispute that the court issued multiple public notices stating that his appearance was required at the virtual hearing, which he failed to attend. *See* Warshaw Decl., Ex. B and C. Thus, pursuant to the Court's notices and *N.J. Ct. Rule* 6:6-2, Plaintiff was required to appear for the September 22, 2021. Because he failed to do so, operation of *Rule* 6:6-2—not the conduct of Defendant—compelled entry of default against him.

Though Plaintiff had filed a motion to compel returnable September 27, 2021, which was pending at the time of the September 22, 2021 hearing, the state court had not yet decided that the matter was referable to arbitration as required by the FAA. *See* 9 U.S.C. § 3. Plaintiff could have avoided default by simply appearing as required by the court's notices or checked with the court to confirm his erroneous belief that his appearance was not required. Plaintiff's own actions are the cause of the additional time and expense incurred due to his failure to appear at the hearing

10

and resulting entry and default. Notably, because default was vacated days later, Plaintiff's contention that he was harmed by Defendant's "unfair and unconscionable" conduct is further without merit.

Accordingly, the Court finds that Plaintiff has not demonstrated that he is entitled to summary judgment as a matter of law on the grounds that Defendant's failure to stop the state court from entering default against Plaintiff violated the FDCPA.

### c. Defendant Did Not Violate the FDCPA During Oral Argument at the September 27, 2021 Motion Hearing.

Plaintiff next argues that Defendant acted unconscionably by advancing misrepresentations and frivolous arguments to the trial court at the September 27, 2021 motion hearing on Plaintiff's motion to compel arbitration. (MSJ Br. at 17-19.) Specifically, Plaintiff argues that Defendant made the following misrepresentations: (1) that Plaintiff waived his right to compel arbitration because the trial date had already passed; (2) that Plaintiff failed to comply with the steps and conditions required to initiate arbitration under the Cardholder Agreement; (3) that Plaintiff waived his right to compel arbitration because he did not request arbitration when he filed his answer to the Complaint; (4) that the arbitration provision states only that a party "may" request arbitration, but the opposing party in not "required" to proceed to arbitration. (*Id.*)

#### i. *Defendant's Waiver Arguments.*

"The contractual right to arbitrate, like any other right, can be waived." *Valli v. Avis Budget Rental Car Grp., LLC*, No. CV 14-6072 (JBC), 2024 WL 4349747, at *6 (D.N.J. Sept. 30, 2024). Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (applying waiver analysis to motion to compel arbitration pursuant to the FAA). The waiver analysis, in the context of the right to compel arbitration, focuses "on the actions of the person who held the right." *Id.* The Third Circuit has held that a "case-specific waiver

11

analysis is not susceptible to precise line-drawing." *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 212 (3d Cir. 2010); *see also Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 460 (3d Cir. 2011) (stating "*Nino* does not establish a base line of what must be shown for acquiescence in pre-trial orders to waive the right to arbitrate."); *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 232 (3d Cir. 2008) (holding "the length of the time period involved alone is not determinative") (citation omitted). Rather, the waiver analysis is guided by the "circumstances and context of each case." *Gray Holdco*, 654 F.3d at 452.

Under New Jersey law, "a party need not expressly state its intent to waive a right; instead, waiver can occur implicitly if "the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." *Cole v. Jersey City Med. Ctr.*, 215 N.J. 265, 277 (2013). New Jersey courts "must engage in a fact-sensitive, 'totality of the circumstances' analysis when determining whether a party has waived the right to arbitrate a claim." *Hopkins v. LVNV Funding LLC*, 481 N.J. Super. 49, 63 (App. Div. 2025) (quoting *Cole*, 215 N.J. at 277). When assessing whether a party waived its contractual right to arbitrate, New Jersey courts consider:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any.

*Cole*, 215 N.J. at 281. "No one factor is dispositive." *Id.* "A court will consider an agreement to arbitrate waived, however, if arbitration is simply asserted in the answer and no other measures are taken to preserve the affirmative defense." *Id.* The "failure to list arbitration as an affirmative

12

defense is not dispositive of the issue," but "it does inform the waiver analysis." *Id.* (citing *N.J. Ct. R.* 4:5-1(b)).

Here, Plaintiff argues that Defendant acted unconscionably when it argued that Plaintiff waived his right to compel arbitration because the arbitration provision of the Cardholder Agreement provided that arbitration can be chosen at any time by filing a motion to compel. (MSJ Br. at 17-19.) Plaintiff contends that upon Plaintiff's filing of such motion, Defendant was contractually bound to proceed to arbitration without the right to oppose Plaintiff's motion. (*Id.*) But Plaintiff ignores that contractual rights can be waived and are thus subject to a fact-intensive waiver analysis, which considers such factors as, *inter alia*, the delay in making the arbitration request, whether the delay was part of the litigant's strategy, the filing of dispositive motions, whether the party raised the arbitration issue in its answer and affirmative defenses, and the proximity of the request to the date of trial. *See Cole*, 215 N.J. at 281.

In the SCA, Plaintiff filed his Answer on July 5, 2021. (SUMF ¶ 5.) Plaintiff did not raise the arbitration issue in his Answer, which did not include a *N.J. Ct. R.* 4:5-1(b) certification listing indicating he sought arbitration. (*See id.*) Two days later, a trial notice was issued setting the trial date for September 22, 2021. (SUMF ¶ 32.) Nearly two months later, on August 26, 2021, only after Defendant expended the resources in filing a dispositive motion for summary judgment, did Plaintiff first seek to invoke his contractual right to arbitrate, with less than one month before the trial date of September 22, 2021. (*See* SUMF ¶ 39.) Notably, the state court did not find that Defendant's arguments for waiver were frivolous, though it nonetheless granted Plaintiff's motion.

Based on all the foregoing facts, Defendant's argument that Plaintiff waived his contractual right to invoke the arbitration provision of the Cardholder Agreement was reasonably supported by the factors applicable to the waiver analysis. *See Cole*, 215 N.J. at 281; *Valli*, 2024 WL 4349747,

13

at *6. Additionally, the Court finds Plaintiff's contention that Defendant misrepresented that the trial date had already passed because no trial occurred, and default was merely entered, is without merit. (MSJ Br. at 17-19.) As the trial date was set for September 22, 2021, and the representation was made on September 27, 2021, Defendant's representation was accurate. (*See* SUMF ¶ 39.)

Accordingly, the Court finds that Plaintiff has failed to demonstrate that Defendant's opposition to his motion to compel arbitration based on waiver was unconscionable pursuant to the FDCPA.

### ii. *Defendant's argument that Plaintiff failed to comply with the terms and conditions of the Cardholder Agreement required to invoke arbitration.*

Next, Plaintiff argues that Defendant violated the FDCPA when it represented to the state court that Plaintiff had failed to comply with the terms and conditions required to initiate arbitration pursuant to the Cardholder Agreement. (MSJ Br. at 18 (citing Hersh Decl., Ex. 12 at 7:24-8:5).) During that segment of the hearing, counsel from Defendant's office argued:

> [Defendant] would also like to point out that there are steps which are outlined in the terms and conditions that [Plaintiff] must follow in order to initiate arbitration. [Plaintiff's] demand from this Court to just initiate at this point in time, it's insufficient pursuant to the terms and conditions that he points to, to initiate arbitration.

(Hersh Decl., Ex. 12, 7:24-8:5.) The court then inquired as to the preconditions at issue, at which point Defendant's attorney corrected his position and stated: "Yes, Your Honor. It does seem that [Plaintiff's] right that they may file a motion to proceed with arbitration." (*Id.*, 9:21-25.)

To be material under the FDCPA, a representation must affect the consumer's ability to respond to the debt. *Jensen v. Pressler & Pressler, LLP*, 792 F.3d 413, 421 (3d Cir. 2015). To support FDCPA liability, the plaintiff must also demonstrate that he relied on the misrepresentation, causing harm. *See Rabinowitz v. Alltran Fin. LP*, No. 21-2765, 2022 WL 16362460, at *9 (D.N.J. Oct. 25, 2022) (finding lack of standing where the plaintiff alleged violations of the FDCPA via

14

improper letters because the plaintiff "failed to show that he . . . relied in any way on the alleged misrepresentations in the letters, and subsequently . . . failed to show that he was actually harmed in any way by their receipt"); *Rohl v. Pro. Fin. Co., Inc.*, 21-17507, 2022 WL 1748244, at *4 (D.N.J. May 31, 2022) (finding lack of standing where the plaintiff alleged that the defendant "used misleading representations" in a collection letter in violation of the FDCPA, as the plaintiff did not "allege that she relied on [the defendant's] representation" or allege any "additional harm" due to the collection letter).

Here, Plaintiff has not demonstrated reliance on any misrepresentation raised in oral argument because Plaintiff did not rely on the alleged misrepresentations Defendant made to the state court. *See Rabinowitz*, 2022 WL 16362460, at *9. Nor has Plaintiff articulated the harm that Defendant's argument caused. *See id.* Moreover, the state court granted Plaintiff's motion, undermining his claim that the representation affected his ability to respond to the Debt and was thus material. *See Jensen*, 792 F.3d at 421.

Accordingly, the Court finds that the statement at issue cannot support FDCPA liability because Plaintiff has not established materiality, reliance, or any resultant harm.

### *iii. A party may request arbitration but is not "required" to proceed.*

Plaintiff further argues that Defendant misrepresented to the state court that the arbitration provision states that a party "may" request arbitration but is not "required" to proceed. (MSJ Br. at 18-19.) The Court finds that Plaintiff has failed to demonstrate any falsity in Defendant's representation to the state court, as preclusion of the right to litigate the claim in court does not mean that the party must proceed to arbitration.

As Defendant correctly argues, upon Plaintiff filing the motion to compel, Defendant could have settled with Plaintiff or dismissed the collection action altogether with prejudice. (Opp. Br.

15

at 33.) Neither of these alternatives to proceeding with arbitration are prohibited by the Cardholder Agreement, which merely precludes the litigation of the claim in court if Plaintiff timely exercised his rights pursuant to the arbitration provision without first waiving his right to do so. (*See* Duong Cert., Ex. A at 10.) And as previously discussed, Defendant validly challenged whether Plaintiff waived his contractual right to arbitration—if Plaintiff had indeed waived that contractual right, then his untimely request would not require arbitration.[2] *See Cole*, 215 N.J. at 281; *Valli*, 2024 WL 4349747, at *6.

Accordingly, the Court finds that the statement at issue cannot support FDCPA liability because Plaintiff has not demonstrated any falsity in Defendant's statement.

### d. Defendant Did Not Violate the FDCPA When it Filed Its Motion to Reinstate and Transfer the Proceeding to Small Claims Court.

Plaintiff argues that Defendant acted unconscionably in violation of the FDCPA when it filed the motion to reinstate in the SCA and transfer the matter to the small claims division, arguing there was "no legal basis" for Defendant to do so. (MSJ Br. at 19-23.) Plaintiff further contends this conduct by Defendant violated the state court's order compelling arbitration. (*Id.*) Defendant argues that Rule 9 of the AAA Consumer Arbitration Rules and the Cardholder Agreement both permitted Defendant to adjudicate their claim in small claims court in lieu of arbitration. (Opp. Br. at 34-38.)

AAA Consumer Arbitration Rules R-9, titled "Small Claims Option for the Parties," states in pertinent part:

---

[2] Defendant also argues that an attorney's representations to the court cannot give rise to FDCPA liability and are protected by the *Noerr-Pennington* Doctrine. (Opp. Br. at 19-24.) However, the FDCPA expressly includes lawyers and litigation activities within its purview. *See Heintz v. Jenkins*, 514 U.S. 291 (1995). Moreover, "the Third Circuit has yet to extend the *Noerr-Pennington* doctrine to FDCPA cases." *Tobing v. Parker McCay, P.A.*, DEA, 2018 U.S. Dist. LEXIS 71639, *24-25 (D.N.J. Apr. 30, 2018). Similarly, this Court declines to do so here. *See also Allen v. LaSalle Bank*, 629 F.3d 364, 368-69 (3d Cir. 2011) ("The application of the New Jersey litigation privilege does not absolve a debt collector from liability under the FDCPA").

> If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows: (a) The parties may take their claims to small claims court without first filing with the AAA. (b) After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case. . . .

Notably, the Cardholder Agreement does not expressly prohibit the parties from filing a motion to reinstate or transfer the matter to small claims court. Indeed, the Cardholder Agreement includes a small claims provision which states that "[i]ndividual [c]laims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court." (Duong Decl., Ex. A at 10). Plaintiff's assertion that the Cardholder Agreement only exempts from arbitration disputes which were *originally* filed in small claims court is not supported by the express language of that provision. (MSJ Br. at 22.) Rather, the small claims provision indicates that upon filing in small claims court, the matter is not subject to arbitration unless and until the matter is removed from small claims court. Thus, Defendant's motion to transfer comported with AAA R-9(b), which expressly permits a matter within the jurisdictional limits to be transferred to small claims court.

Accordingly, the Court finds that Plaintiff has failed to demonstrate that Defendant's filing of a motion to reinstate and transfer to the small claims division was unconscionable pursuant to the FDCPA.

### e. Defendant Did Not Violate the FDCPA By Attempting to Reopen the AAA Arbitration.

Plaintiff argues that Defendant's attempt to reopen the AAA arbitration after previously refusing to pay the $2,900 in AAA fees was unconscionable. (MSJ Br. at 23-24.) But it was Defendant's client as party to the litigation, not Defendant, that bore responsibility for paying the AAA fee. (*See* Hersh Decl., Ex. 13 (citing AAA Consumer Arbitration Rules R-55).) When

17

Defendant's client refused to pay the arbitration fee, Defendant reasonably sought to avail its client of AAA Consumer Rules R-9 and the Cardholder Agreement's small claims provision to litigate the matter in small claims court. At that juncture, Plaintiff could have accepted the small claims court's authority to resolve the $1,300 dispute, but instead objected. As a result, Plaintiff left Defendant little choice but to seek to reinstate the AAA arbitration on behalf of its client, as it was the only remaining avenue to collect the Debt. In response to Plaintiff's objection to adjudicating the action in small claims court, Defendant's client finally sought to pay the outstanding balance (more than double the amount in controversy) required for the AAA to reopen the arbitration. Then, it was *Plaintiff* who objected to the reopening of the arbitration that he initially sought as his preferred forum over the SCA or small claims court. Plaintiff obtained the result he requested—the arbitration remained administratively terminated for non-payment. Thus, Plaintiff has contributed to, if not caused, the delays he now complains of in the instant action.

Accordingly, the Court finds that Plaintiff has failed to establish that Defendant acted unconscionably when it attempted to reopen the AAA arbitration.

### f. Defendant's Combined Conduct Did Not Violate the FDCPA.

Finally, Plaintiff argues that "[e]ven if the individual acts set forth above do not violate the FDCPA separately, then certainly Defendant's combined conduct does." (MSJ Br. at 24.) Plaintiff contends, without citation to any supporting case law, that Defendant's "systemic and coordinated attempts to deprive Plaintiff of his right to arbitrate his claims is unfair and unconscionable conduct and violated sections 1692e and 1692f of the FDCPA. (*Id.* at 25.) For the reasons stated above, the Court finds that Plaintiff has not demonstrated that Defendant's individual acts were deceptive or unconscionable pursuant to the FDCPA. Neither has Plaintiff demonstrated that those acts, taken together, are unconscionable such that Plaintiff is entitled to summary judgment as a matter of law.

## V.  CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 48) is **DENIED**.

Dated: June 10, 2025

_____
KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE